IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
RITA NAVARRO,                    )
                                 )
          Plaintiff,             )   2:08-cv-00527-GEB-EFB
                                 )
     v.                          )   ORDER*
                                 )
SEARS LIFE INSURANCE COMPANY,    )
                                 )
          Defendant.             )
_____)
```

        Defendant Sears Life Insurance Company ("Sears") moves to dismiss Plaintiff Rita Navarro's ("Navarro") complaint and to strike her requests for punitive and emotional distress damages. Navarro opposes the motion.

PLAINTIFF'S FACTUAL ALLEGATIONS

        Navarro alleges she was contacted by a Sears telemarketer ("Telemarketer") on or about July 28, 2003. (Compl. ¶ 12.) The Telemarketer followed a Spanish script ("Script") and sold Navarro an accidental death life insurance policy ("Policy"). (Id. ¶¶ 4, 11.) During a partly recorded telephonic conversation, the Telemarketer

---

    *    This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

1  described the Policy as "the plan for cause of accidental death of
2  $1,000,000 which covers yourself, your spouse and your children for a
3  premium of $9.96 that will be billed to your Sears credit card monthly
4  . . . ."  (Id. ¶ 7.)  After the telemarketing call, Sears delivered
5  the written Policy to Navarro in English only.  (Id. ¶¶ 3, 9.)
6  　　　　　On April 26, 2005, Navarro's husband was killed in an
7  automobile accident.  (Id. ¶¶ 5, 9.)  Navarro made a claim for an
8  accidental death benefit under the Policy and Sears paid her $50,000,
9  rather than the $1,000,000 Navarro expected.  (Id.)  The written
10 Policy provides for payment of less insurance benefits for the death
11 of a spouse of the primary insured than it provides for the death of
12 the primary insured, Navarro.  (Id. ¶¶ 6, 7, 9.)  The benefits are
13 also less when the death takes place in an automobile accident instead
14 of on a "common carrier."  (Id.)  Navarro alleges the Telemarketer
15 never disclosed these provisions during the telephone conversation,
16 and Navarro understood from the telephone conversation that she would
17 receive the $1,000,000 benefit if her husband died in an automobile
18 accident.  (Id. ¶ 6.)
19 　　　　　On March 10, 2008, Navarro filed a complaint against Sears
20 alleging breach of contract, fraud, and violations of 16 C.F.R.
21 § 310.3 (Telemarketing Sales Rule or "TSR"), California Civil Code
22 section 1670.6, and California Business and Professions Code section
23 17592.
24 ///
25 ///
26 ///
27 ///
28 ///

DISCUSSION[1]

I. Breach of Contract

Sears seeks dismissal of Navarro's breach of contract claim, arguing Navarro "cannot[] claim that under the express terms of her policy[] she is entitled to $1,000,000" because "a simple reference to the 'Coverage' portion of the certificate of insurance discloses that Plaintiff was paid precisely what she was owed: $50,000." (Mot. at 8:9-10.) Navarro's complaint does not identify how Sears breached the contract. (See Compl. ¶¶ 1-13.)

Navarro argues the terms of the Policy, particularly the legal term "common carrier," are not "plainly explained or defined." (Opp'n at 10:23-11:19.) However, Navarro does not explain how this argument supports her breach of contract claim. Navarro cites Clement v. Smith, 16 Cal. App. 4th 39 (1993), and Greenfield v. Ins. Inc., 19 Cal. App. 3d 803 (1971), to support her argument that Sears breached the contract. (Opp'n at 11:20-12:16.) However, neither case discusses breach of contract. (Id. (citing Clement, 16 Cal. App. 4th at 45 (discussing fraud claim), and Greenfield, 19 Cal. App. 3d at 811 (same)).) Navarro also cites Laing v. Occidental Life Ins. Co. of Cal., 244 Cal. App. 2d 811, 817-21 (1996); but that case concerned reformation of a contract, which is not at issue here.

Accordingly, this portion of the motion is granted.

II. Fraud

A. Misrepresentation

Sears argues Navarro's fraud claim fails because the Telemarketer did not misrepresent the terms of the Policy. (Mot. at

---

[1] The Federal Rule of Civil Procedure 12(b)(6) dismissal standard is well known and need not be repeated here.

3

1  11:7-11:15.)  Misrepresentation is an essential element of a fraud
2  claim.  <u>Hackethal v. Nat'l Cas. Co.</u>, 189 Cal. App. 3d 1102, 1111
3  (1987).

4  Navarro alleges the Telemarketer's misrepresentation was:
5  "[y]ou selected the plan for cause of accidental death of $1,000,000
6  which covers yourself, your spouse and your children for a premium of
7  $9.96 that will be billed to your Sears credit card monthly . . . ."
8  (Compl. ¶ 7.)  Navarro alleges this statement was a misrepresentation
9  since the Telemarketer never disclosed that the $1,000,000 benefit was
10 payable only upon death of the primary insured on a common carrier.
11 (Compl. ¶ 6.)  Sears counters it did not misrepresent the terms of the
12 Policy because "summarizing the plan as one for cause of accidental
13 death of $1,000,000" cannot be reasonably interpreted "to mean that no
14 matter who died or how, $1,000,000 would be the benefit."  (Mot. at
15 11:7-11:15; Reply at 7:19-22.)

16 Considering Navarro's misrepresentation allegation and the
17 reasonable inferences which can be drawn therefrom in the light most
18 favorable to Navarro, Sears has not shown that the Telemarketer's
19 statements at issue did not misrepresent the terms of the Policy.  <u>See</u>
20 <u>Clement v. Smith</u>, 16 Cal. App. 4th 39, 44 (1993) (finding
21 misrepresentation in broad statement that policy covered "any lawsuit"
22 in regard to sale of property without disclosing that coverage was
23 limited to personal injury and property damage).

24 Sears also argues the Script allegedly followed by the
25 Telemarketer shows no misrepresentation was made as the differing
26 benefit amounts are clearly disclosed therein.[2]  (Reply at 4:3-11.)

27 ─────────────────────
28      [2]    The Script is considered part of Navarro's complaint for the
                                                           (continued...)

4

1       In one instance, the Script requires the Telemarketer to
2  state the benefit amounts, saying "[w]ith this insurance plan your
3  family would receive [BENEFIT AMOUNT] for covered public
4  transportation accidents . . . . [BENEFIT AMOUNT] for covered car
5  accidents . . . . And [BENEFIT AMOUNT] for all other covered
6  accidents . . . ."  (Decl. of Hank G. Greenblatt in Supp. of Opp'n,
7  English Script at 2.)  The Script does not state the actual benefit
8  amounts; since Navarro alleges that different benefit amounts were not
9  disclosed to her during the conversation, this portion of the Script
10 does not support Sears's argument that *different* benefit amounts were
11 disclosed to Navarro.  The Script also includes the benefit amounts
12 payable upon death of the primary insured's spouse and dependant
13 children, broken down by the same categories of accidents, but the
14 Script states that these disclosures are "optional" and only given
15 "(IF CUSTOMER WANTS TO KNOW BENEFIT NOW)."  (English Script at 4-5.)
16 Therefore, the Script does not reveal the Telemarketer disclosed that
17 benefit amounts differ by family member and type of accident.
18     B.   Justifiable Reliance
19      Sears argues Navarro's fraud claim fails because Navarro's
20 reliance on the Telemarketer's alleged misrepresentation was not
21 justifiable in light of Navarro's receipt of the Policy following the

---

[2](...continued)
purposes of this dismissal motion since Navarro alleges the Telemarketer followed the Script, Navarro attached the Script to a declaration in support of her opposition, and Sears argues the Script should be considered. (Reply at 3:7-19; Compl. ¶ 11.) See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (holding that when ruling on a motion to dismiss, the incorporation by reference doctrine "permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading'") (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)).

telemarketing call, since the Policy "unambiguously set[] forth the differing levels of coverage." (Mot. at 11:16-12:15.) Sears cites Hackethal, which states the general rule that "the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms*. It is a duty of the insured to read his policy." 189 Cal. App. 3d at 1112 (quoting Aetna Cas. & Sur. Co. v. Richmond, 76 Cal. App. 3d 645, 652 (1977)).

Navarro argues an exception to this general rule applies, citing Clement v. Smith, in which the court stated:

> When dealing with a contract as adhesive as the typical insurance policy, we are unwilling to impose on the insured so onerous a burden as would automatically defeat any agent's liability for misrepresentation. . . . Absent some notice or warning, an insured should be able to rely on an agent's representations of coverage without independently verifying the accuracy of those representations by examining the relevant policy provisions. This is particularly true in view of the understandable reluctance of an insured to commence a study of the policy terms where even the courts have recognized that few if any terms of an insurance policy can be clearly and completely understood by persons untrained in insurance law.

16 Cal. App. 4th 39, 45 (1993) (citing Raulet v. Nw. Nat'l Ins. Co. of Milwaukee, 157 Cal. 213, 230 (1910) and Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 783 (1979)). Justifiable reliance in a fraud action is ordinarily a question of fact, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion." Blankenheim v. E.F. Hutton & Co., 217 Cal. App. 3d 1463, 1475 (1990).

Navarro alleges the Telemarketer never represented the amount of the death benefit differed depending on which insured died

6

and in what type of accident. (Compl. ¶¶ 6-7, 11-12.) Sears counters Navarro was "expressly told the insurance plan had 'exclusions and limitations' which she declined to have read to her." (Mot. at 11:23-24.) However, Sears has not shown that this was sufficient notice or warning that would as a matter of law render Navarro's reliance on the Telemarketer's alleged oral misrepresentation unjustifiable. Accordingly, this portion of the dismissal motion is denied.

III. Telemarketing Sales Rule

   A.   Inverse Preemption

Sears seeks dismissal of Navarro's Telemarketing Sales Rule claim, arguing it is inversely preempted by California law under 15 U.S.C. § 1012 ("the McCarran-Ferguson Act"). (Mot. at 12:16-15:16.) That Act provides that a federal statute is inversely preempted by a state law if:

> (1) the [federal] statute does not "specifically relate" to the business of insurance, (2) the acts challenged under the [federal] statute constitute the business of insurance, (3) the state has enacted a law or laws regulating the challenged acts, and (4) the state law would be superseded, impaired or invalidated by the application of the federal statute. All four factors must be satisfied.

Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co., 50 F.3d 1486, 1489 (9th Cir. 1995) (citing Cochran v. Paco, Inc., 606 F.2d 460, 464 (5th Cir. 1979)).

Sears argues California Insurance Code section 790.03 ("Section 790.03") regulates the acts at issue in Navarro's claims, and application of the TSR would supersede, impair, or invalidate Section 790.03 because the TSR provides a private cause of action whereas Section 790.03 provides an administrative remedy only. (Mot. at 15:1-15.) Navarro counters that application of the TSR would not

7

supercede, invalidate, or impair Section 790.03 since the TSR is consistent with state policy and does not interfere with the state administrative remedy. (Opp'n at 17:23-18:3.) Even where state law allows only administrative remedies, and federal law allows a private right of action for the identical conduct involved in that state law, this does not necessarily mean that the state law preempts the federal law. Merchants Home, 50 F.3d at 1492 (reversing grant of judgment on the pleadings for inverse preemption). Since Sears has not shown that Navarro's TSR claim is inversely preempted, this portion of the motion is denied.

B.  Failure to State a Claim

Sears argues Navarro's TSR claim fails because Sears disclosed all material restrictions and limitations in a clear and conspicuous manner and Sears is not engaged in a pattern or practice of deceptive telemarketing. (Mot. at 15:17-16:19.) The TSR prescribes

> [i]t is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct: (1) Before a customer pays for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information: . . . (ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services . . . [.]

16 C.F.R. § 310.3(a) (footnote omitted). Navarro may bring a private cause of action under the TSR if Sears "has engaged or is engaging in [a deceptive] pattern or practice of telemarketing." 15 U.S.C. § 6104(a).

///
///

1.   Clear and Conspicuous

Sears argues it disclosed all material restrictions and limitations in a clear and conspicuous manner, after the telemarketing call but before Navarro started paying premiums, since "Navarro was sent the certificate of insurance" which disclosed the differing benefit amounts.  (Mot. at 16:7-9.)  Navarro counters a clear and conspicuous disclosure requires a Spanish translation when the oral sales presentation was in Spanish.  (Opp'n at 18:18-19:25.)  Navarro cites 16 C.F.R. § 14.9(a), which prescribes "[w]here . . . rules . . . require 'clear and conspicuous' disclosure of certain information . . . . the disclosure shall appear in the language of the target audience (ordinarily the language principally used in the advertisement or sales material)."  See also In re J. Kurtz & Sons Inc., 87 F.T.C. 1300 (1976) (requiring furniture retailer to cease providing mandatory disclosures only in English when sales presentations were substantially in Spanish); In re Grand Spaulding Dodge, Inc., 90 F.T.C. 406 (1977) (requiring automobile dealer to cease providing mandatory disclosures only in English when advertisements and sales presentations were in Spanish).  Accordingly, Sears has not shown Plaintiff's TSR claim fails on this ground.

Sears also argues the Script shows the Telemarketer disclosed in a clear and conspicuous manner, in Spanish, the differing benefit amounts to Navarro during the telemarketing call.  (Reply at 4:5-11, 5:3-11.)  However, the Script does not show that the Telemarketer actually disclosed the differing benefit amounts since those parts of the Script were "optional."  See supra, Part II.A.  Accordingly, Sears has not shown Plaintiff's TSR claim fails on this ground.

9

### 2. Pattern and Practice

Sears argues Navarro has not alleged facts showing Sears engaged in a pattern and practice of deceptive telemarketing because the Telemarketer offered to read the Policy's "limitations and exclusions" and Navarro refused. (Mot. at 16:14-16.) However, a review of the Script reveals that had Navarro asked the Telemarketer to read aloud the exclusions and limitations, the differing benefit amounts would not have been disclosed. (English Script at 8-9.)

Sears also argues the Script shows it is not engaged in a pattern and practice of deceptive telemarketing as "[t]he script presents a description and disclosure of 'all material restrictions, limitations, or conditions.'" (Reply at 5:14-15.) However, the Script does not show that the Telemarketer actually disclosed the differing benefit amounts since those parts of the Script were "optional." See supra, Part II.A.

Accordingly, Sears has not shown Plaintiff's TSR claim fails on this ground.

## IV. Statute of Limitations Defense

Sears seeks dismissal of Navarro's California fraud and federal TSR claims, arguing these claims are time-barred. (Mot. at 16:20-18:2.) The statute of limitations for the TSR expires three years "after discovery of the violation." 15 U.S.C. § 6104(a). This federal "claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). The statute of limitations for Navarro's California fraud claim is also three years, and this claim accrues upon "the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." Cal. Civ. Proc. Code § 338(d).

1    Navarro alleges she did not realize the Telemarketer's
2 misrepresentation on spousal death benefit until after she received
3 $50,000, instead of the $1,000,000 she expected, as the accidental
4 death benefits for her husband's death; her husband died April 26,
5 2005.  (Compl. ¶¶ 5, 9.)
6    Sears contends Navarro's California fraud claim accrued in
7 2003 when Navarro received the Policy, since at that time Navarro
8 "knew, or certainly should have known" that the Telemarketer allegedly
9 misrepresented the terms of the policy and therefore Navarro had
10 constructive notice.  (Mot. at 16:20-18:2.)  Under California law,
11 however, plaintiffs "have a right to rely on an agent's
12 representations of [insurance] coverage without verifying the policy's
13 terms." Sun v. Equitable Life Assurance Soc'y, 2001 WL 764486, *6
14 (N.D. Cal. June 25, 2001).  Therefore, Sears does not prevail on this
15 portion of its motion.
16    Sears also argues Navarro's TSR claim accrued in 2003 when
17 she received the Policy, since then she had constructive notice of the
18 insurance limitations contained in the written Policy, relying on
19 Grimmet v. Brown for the proposition that the statute of limitations
20 "begins to run when a plaintiff knows or should know of the injury
21 which is the basis for the action."  (Mot. at 17:3-7 (quoting 75 F.3d
22 506, 510 (9th Cir. 1996).)
23    But Sears has not shown constructive notice is imputed in
24 the situation here where Sears is alleged to have failed to disclose
25 written material limitations in the Policy in the same language in
26 which Sears's Telemarketer orally communicated with Navarro when the
27 sale was made.  Therefore, this portion of the motion is denied.
28

V. California Statutory Claims

Sears seeks dismissal of Navarro's claims alleged under California Civil Code section 1670.6 and California Business and Professions Code section 17592. (Mot. at 18:3-17.) Sears argues "[California] Civil Code section 1670.6 does not provide any private cause of action for damages, but merely deems certain contracts 'unlawful'." (Id. at 18:8-10.) Navarro does not address this portion of the motion. Section 1670.6 prescribes that "[a] contract . . . is unlawful if" made in connection with a telemarketing call which is in violation of certain provisions of the TSR, but does not provide a cause of action for damages. Cal. Civ. Code § 1670.6. Accordingly, this portion of the motion is granted.

Sears also argues "[California Business and Professions] Code section 17592 has no application to present controversy. This section merely defines and enumerates various prohibited unsolicited and unwanted telephone calls." (Mot. at 18:13-15.) Navarro does not address this portion of the motion. Section 17592 concerns violations of the "do not call" list. See Cal. Bus. & Prof. Code § 17592(c)-(d). Since Navarro has not alleged any facts concerning this stated section, this portion of the motion is granted.

VI. Punitive and Emotional Distress Damages

Sears moves to strike Navarro's requests for emotional distress and punitive damages. (Mot. at 10:13-19, 12:26-28.) Sears argues the punitive damages request should be stricken because Navarro's fraud claim fails. (Id. at 12:26-28.) However, since Navarro's fraud claim survives the dismissal motion, this portion of the motion is denied.

1           Sears argues the emotional distress damages should be
2   stricken because these damages are not available under a breach of
3   contract claim.  (Mot. at 10:13-14.)  However, Sears has not shown
4   emotional distress damages are not available for Navarro's fraud
5   claim; therefore, this portion of the motion is denied.

CONCLUSION

7           Navarro's breach of contract claim, California Civil Code
8   section 1670.6 claim and California Business and Professions Code
9   section 17592 claim are dismissed.  The remainder of the dismissal
10  motion is denied.  The motion to strike is denied.
11          IT IS SO ORDERED.
12  Dated:  August 15, 2008

                                    _____
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge